# Exhibit 1

## INDEPENDENT CONTRACTOR AGREEMENT

This Independent Contractor Agreement (the "**Agreement**") between Otto Ladder Safety, Inc. a Delaware corporation ("**we**," "**us**," or the "**Company**"), and Peter Sparber ("**you**") takes effect on November 27, 2018 (the "**Effective Date**").

1.    **Term and Termination**.  This Agreement starts on the Effective Date and ends on the date set forth in <u>Exhibit A</u> or upon termination by either party: (a) for any reason, upon thirty (30) days advance written notice, or (b) for a breach of this Agreement, immediately upon written notice (the "**Term**").

2.    **Services and Payment**.  During the Term, we may engage you to provide certain services or deliverables (collectively, the "**Services**") as set forth in <u>Exhibit A</u>.  We will pay you for the Services in accordance with the terms set forth in <u>Exhibit A</u>.  We will reimburse you for reasonable out-of-pocket expenses that have been pre-approved by us, including, but not limited to, phone, mailing, labor, mileage, travel, and insurance; otherwise, you are solely responsible for all costs and expenses incurred in rendering the Services.  Notwithstanding the foregoing, Company agrees, upon prior written approval by Company, and upon receipt of such documentation as Company may request to evidence such expenses, to reimburse you for all extraordinary expenses (such as travel specifically requested by Company, or luncheons or dinners held at Company's request).  For all expenses, you will furnish statements, receipts, and vouchers as required by us.  At your discretion, you may utilize others to assist you in providing the Services, provided that they agree to abide by the terms of this Agreement.

3.    **Confidential Information**.  "**Confidential Information**" means any information or material, whether in oral, audio, visual, written or other form, whether obtained prior to or after the Effective Date, concerning us or our clients, including without limitation sales and marketing information, ideas, source code, business plans, financial information, concepts, specifications, designs, artwork, know-how, processes, or other information that by its nature is generally considered proprietary and confidential.  If performing work for our clients, the client's identity and the nature of the project will be "Confidential Information" when that information is deemed confidential by us.  You will keep in confidence all Confidential Information that you receive, using the same degree of care that you use to protect your own confidential or proprietary information, which degree may not be less than a reasonable standard of care.  Except as necessary for the services provided, you may not, directly or indirectly, use or disclose any Confidential Information for any purpose.  You may not photocopy or reproduce any portion of the Confidential Information and, upon completion of the Services, you will return the Confidential Information and all related material, including all copies and summaries to us.

4.    **Ownership of Creative Works**.  Works of authorship or inventions that are designed, created, developed or conceived in connection with the Services ("**Creative Works**") will be considered "works made for hire" as defined in the Copyright Act at 17 U.S.C. Section 101.  To the extent the Creative Works are not "works made for hire," you hereby assign and agree to assign all rights in the Creative Works to us.  You will execute any assignments and other documents, and take any other action as we reasonably request,

1

without payment of additional consideration, as may be necessary or advisable to convey full ownership of all intellectual property rights to the Creative Works and to protect our interest in the Creative Works. This Section 4 does not apply to any invention or other Creative Works for which no equipment, supplies, facility, or confidential information of ours was used and which was developed entirely on your own time, and which does not relate to our business or the Services. If we are unable, after reasonable effort, to secure your signature on any document needed to apply for, obtain or enforce any intellectual property rights with respect to which you have made a contribution, you irrevocably designate and appoint us and our officers and agents as your agents and attorneys-in-fact to act for and in your behalf and stead for and in connection with the execution and filing of any such document, with the same legal force and effect as if such acts were performed by you.

5.  **Independent Contractor Status**.  You are an independent contractor and not our employee or agent.  You control the hours and method of providing the Services.  You have no authority to bind us in any matter whatsoever.  You have no right to participate in any of our presently existing or future employee benefits or employee benefit plans, including stock option plans, retirement plans, medical plans, or other benefits provided for our employees from time to time.  You are responsible for the wages and benefits of your own employees and compliance with all applicable laws.  To the extent required under applicable law, you will report as income all compensation received under this Agreement and pay all taxes due on compensation.  You are solely responsible for all taxes that may be payable in connection with the Services or this Agreement.  You are responsible for any subcontractor's compliance with the terms of this Agreement and for the subcontractor's performance of your obligations hereunder.  Any subcontractors engaged by you to perform Services must have signed an agreement that complies with the requirements under this Agreement regarding Confidential Information and ownership of Creative Works, copies of which shall be provided to us before any such subcontractor begins work for you.

6.  **Representations and Warranties**.  You represent and warrant that the Services will be performed in a professional manner and in accordance with applicable professional diligence standards and skill and shall be in conformity with any exhibits to this Agreement and other performance requirements, specifications and descriptions as set forth herein and in any exhibit to this Agreement.  You represent and warrant that: (a) you have the right, power, and authority to enter into this Agreement and assign all rights in the Creative Works to us; (b) the Creative Works conceived or developed by you will be original and the use or transfer of the Creative Works by us will not infringe any third party's intellectual property rights; and (c) we may use the Creative Works without restriction.

7.  **Non-Solicitation of Employees**.  During the Term and for six (6) months from the date of the voluntary or involuntary termination of this Agreement, you will not, directly or indirectly, on your own behalf or in the service or on behalf of others, solicit, divert or hire away, or attempt to solicit, divert or hire away any person employed by us, whether or not the employee is a full-time, part-time or a temporary employee and whether or not the employee is employed pursuant to a written agreement or is at-will.

8.  **Non-Solicitation of Contacts**. During the Term and for six (6) months from the date of the voluntary or involuntary termination of this Agreement, you will not, directly or indirectly, individually or collectively in conjunction with others, engage in activities that compete with us by soliciting, serving, contracting or otherwise engaging for a competing purpose any customer, client, account or contractor for whom you provided Services and who had a business relationship with us, or cause or attempt to cause any existing prospective customer, client, account or contractor for whom you provided services and who had a business relationship with us during the Term to divert, terminate, limit or in any manner modify, or fail to continue or enter into any actual or potential business relationship with us.

9.  **Non-compete**. During the Term and for six (6) months from the date of the voluntary or involuntary termination of this Agreement, you shall not, within any geographic area in which you have worked for the Company or otherwise have had duties or responsibilities for the Company, directly or indirectly, hold any ownership interest in (except as a stockholder of a public company in which you own less than five percent (5%) of the issued and outstanding capital stock of such company), manage, control, serve on the Board of Directors of, or render services of any kind in any capacity to any person or entity engaged in the development, manufacture, marketing, distribution, or sale of any services or products of the same general type, which perform similar functions, or which are used for the similar purposes as any product or service that is then or was during your last year of employment with the Company being developed, manufactured, marketed, distributed or sold by the Company.

    You understand and acknowledge that (i) the products and services of the Company encompassed by this Section include sensor-enabled smart ladders and any other products or services developed or sold during the term of this Agreement; and (ii) the geographic market in which you work or have other duties and responsibilities for the Company is the U.S. You understand and acknowledge, however, that the foregoing description of Company's products and services and geographic market may change, and the provisions of this section shall apply to the Company's products and services and all geographic areas in which you have worked for the Company or have otherwise had duties or responsibilities for the Company.

10. **Indemnification**. You will indemnify and defend us and our employees, officers, directors, representatives, and agents from any and all claims and expenses (including reasonable attorney fees) arising from: (a) any obligation imposed on us to pay any taxes, obligations or similar items, including interest and penalties, in connection with any payments made to you under this Agreement; (b) your negligence or intentional misconduct or omissions; or (c) your breach of this Agreement.

11. **Miscellaneous**. The obligations under Sections 3-5 and 7-10 survive termination of this Agreement. This Agreement will be governed by and interpreted under the laws of the State of Delaware (without regard to its rules on conflicts of law), and any action must be brought in state or federal courts in Minneapolis, Minnesota. If a court finds any provision or part of this Agreement to be unreasonable, in whole or in part, that provision will be deemed and construed to be reduced to the maximum duration, scope or subject matter allowable under applicable law. Any invalidation of any provision or part of this

Agreement will not invalidate any other part of this Agreement. Waiver by either party of a breach of any provision, term or condition will not be deemed or construed as a further or continuing waiver or a waiver of any other provision, term or condition of this Agreement. If any legal action or proceeding is brought in connection with this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees and other costs in connection with that action or proceeding, in addition to any other relief to which it or they may be entitled.

*[Signature Page follows]*

IN WITNESS WHEREOF, the undersigned have executed this Independent Contractor Agreement to be effective as of the Effective Date.

**COMPANY:**

By: Ellen Giuntini
Its: Chief Operating Officer

**CONTRACTOR:**

_Peter Sparber_____, *individually*

_220 Walnut Lane N.W._____
_Vienna, VA  22180_____
Address

5

**Exhibit A**
**to**
**Independent Contractor Agreement**

**Services:**

| Description/Scope of Work: | *Business development* |
|---|---|
| Term: | ~~independent~~ *indefinite* |

**Compensation:**

In consideration of the Services to be performed by you under this Agreement, the Company will issue to you Two Hundred Thousand (200,000) restricted shares of Company common stock (the "**Restricted Shares**") pursuant to the terms of the Restricted Stock Agreement of even date herewith. The Restricted Shares are valued at $0.001 per share. You understand that upon receipt of Restricted Shares, you will recognize income in an amount equal to the value of the Restricted Shares.

GP:4824-6750-6551 v2